IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DONALD ALLAN RAY DOUGAN,

                          Petitioner,                                    OPINION AND ORDER

         v.
                                                                         11-cv-193-wmc
WILLIAM POLLARD, Warden,
Waupun Correctional Institution,

                          Respondent.

State inmate Donald Allan Ray Dougan filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a state court conviction.  On August 3, 2012, the court dismissed that petition, but granted Dougan leave to submit a supplement containing any other proposed grounds for relief.  Dougan has filed a proposed supplemental petition and respondent has replied.  For the reasons set forth below, the court will deny the supplemental petition as well and dismiss this case with prejudice.

FACTS

While the underlying facts have been set forth previously, a procedural overview is necessary for purposes of addressing Dougan's proposed grounds for relief.  Dougan challenges his state court conviction for repeated sexual assault of the same two children and possessing a firearm as a felon.  *See State v. Dougan,* St. Croix County Case No. 2002CF186.  After a jury found Dougan guilty as charged in all counts, the circuit court sentenced him to serve a total of 82 years in prison followed by a 43-year term of extended supervision.

After the circuit court denied Dougan's motion for postconviction relief, he pursued a direct appeal.  During that appeal, Dougan argued that he was denied effective assistance of counsel because his trial attorney failed to:  (a) conduct an adequate cross-examination of a state

crime lab analyst; (b) seek pretrial dismissal of the felon-in-possession charge; (c) call Dougan's Minnesota probation agent to testify regarding reinstatement of his firearm privileges in that state; (d) move to sever the felon-in-possession charge from the sexual assault charges; and (e) hire a private investigator or pursue an alternate presentence investigation report.  Dougan also argued that his Fifth Amendment rights were violated when a probation officer conducted a presentence interview without first reciting the warnings set out in *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966).  Finally, Dougan argued that his sentence was unconstitutionally excessive. The Wisconsin Court of Appeals rejected all of these arguments and affirmed his conviction on all charges in an unpublished decision.  *See State v. Dougan*, 2010 WI App 100, 327 Wis. 2d 797, 788 N.W.2d 383 (June 2, 2010).

Dougan then petitioned for review by the Wisconsin Supreme Court of the following issues:  (1) trial counsel was ineffective for failing to file a motion to dismiss the felon-in-possession charge; (2) the sentence of 82 years' imprisonment was excessive; and (3) "cumulative error" resulted from his defense counsel's deficient failure to adequately cross-examine a state crime lab analyst, sever the felon-in-possession count from the sexual-assault charges, and hire a private investigator or prepare an alternative presentence investigation report.  (Dkt. # 10, Exh. F.)  The Wisconsin Supreme Court summarily denied that petition, affirming the court of appeals' decision and Dougan's conviction.  *See State v. Dougan*, 2010 WI 125, 329 Wis. 2d 373, 791 N.W.2d 381 (Oct. 27, 2010).

On March 12, 2011, Dougan filed his original petition pursuant to 28 U.S.C. § 2254 in this case, raising the following grounds for habeas corpus relief:  (1) he was denied a speedy trial; (2) his defense counsel was ineffective for having failed to object to a speedy trial violation; and (3) the presentence investigator coerced his confession by lying to him about the investigation

2

process and by making false promises.  Noting that Dougan raised none of these claims in state court, the respondent answered with a motion to dismiss for failure to exhaust available state court remedies as required by 28 U.S.C. § 2254(b) and argued that all three grounds were barred from federal habeas review by the doctrine of procedural default.

In response, Dougan moved to withdraw grounds one and two, conceding that those claims were unexhausted.  Dougan also requested leave to amend the petition to assert additional grounds for relief.  On August 3, 2012, the court granted Dougan's motion to withdraw his unexhausted claims (grounds one and two) before granting respondent's motion to dismiss the third ground for relief as barred by the doctrine of procedural default.  Mindful of the restriction on successive applications for habeas corpus relief, *see* 28 U.S.C. § 2244(b), the court also granted Dougan's request for leave to supplement his petition with any other, exhausted claim he may wish to pursue in this case.  (Dkt. # 19, at 7).  The court specifically instructed Dougan to list each proposed supplemental ground for relief and provide "a short statement of supporting facts," along with a showing that he had exhausted his state court remedies with respect to those claims.  (*Id.*).

Dougan subsequently filed a proposed supplement to his petition, along with several exhibits.  (Dkt. # 20).  As respondent notes, Dougan did *not* comply with the court's order to provide a "short statement of supporting facts" for each proposed claim.  Respondent contends, therefore, that the supplemental petition should be summarily dismissed.  In addressing any *pro se* applicant's petition, however, the court must read the allegations generously, reviewing them under "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *Perruquet v. Briley*, 390 F.3d 505, 512-13 (7th Cir.2004) (explaining the difference between cognizability and sufficiency of a habeas petition).

Construing Dougan's proposed supplement under this lenient standard, he appears to seek federal habeas corpus relief of the same issues that his appellate attorney presented on direct appeal in his petition for review by the Wisconsin Supreme Court. Dougan also attempts to raise two grounds that were raised on direct appeal, but not included in that petition for review: (1) the felon-in-possession charge should not have been brought in the first place; and (2) the probation officer who prepared the presentence information report failed to inform him of his constitutional rights or give *Miranda* warnings before taking his statement. Even under the generous standard that applies to *pro se* pleadings, Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts mandates dismissal if it plainly appears that petitioner is not entitled to relief. As outlined below, Dougan's supplemental petition must be dismissed for failure to present a valid claim for federal habeas corpus relief.

OPINION

## I. Exhaustion and the Doctrine of Procedural Default

The court dismissed two of Dougan's original three grounds for issuance of a writ of habeas corpus because he failed to exhaust state court remedies in compliance with procedure. (Dkt. # 19). As explained in that order, before a prisoner can seek a writ of habeas corpus in federal court, he must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (citation omitted)). Thus, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 845 (1999).

To satisfy the exhaustion requirement, a "habeas petitioner must fully and fairly present his federal claims to the state courts," which requires the "petitioner to give state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006).  A petitioner is also required to present his federal claims to the state courts in accordance with the state's procedural requirements so that the state courts have a meaningful opportunity to correct any mistakes. *See Martin v. Evans*, 384 F.3d 848, 854 (7th Cir. 2004); *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001). If the petitioner misses the opportunity to present a claim to the state courts, then federal review of that claim is forfeited. *See Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007).

### A.  Procedural Default of *Miranda* and Felon-in-Possession Claims

Here, the only claims that received one complete round of the state appeals process are those outlined in the petition for review that Dougan's appellate attorney filed with the Wisconsin Supreme Court.  *See O'Sullivan*, 526 U.S. at 845.  Neither Dougan's proposed claim concerning the validity of the felon-in-possession charge, nor the probation officer's failure to inform him of his constitutional rights under *Miranda,* were not included in that petition.  While Dougan apparently sought to raise those claims later in a *pro se* petition to commence an original action in May 2011, well after his initial petition for review was rejected by the Wisconsin Supreme Court, Dougan was denied leave to proceed on January 24, 2012.  *See* Dkt. # 20, Exh. 2 & 3 (*Dougan v. Court of Appeals, Dist. III.*, No. 2011AP2524-OA).  Dougan's failure to preserve these two claims in a procedurally proper manner constitutes a fatal default barring federal

habeas corpus review unless he demonstrates both "cause and prejudice" as a result of the default.[1]  *See Lieberman*, 505 F.3d at 669.  Cause for a default is ordinarily established by showing that some type of "external impediment" prevented the petitioner from presenting his claim. *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010) (quoting *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004)).  Prejudice is established by showing that the violation of the petitioner's federal rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id*.

Dougan was represented by counsel during his direct appeal and this same attorney also prepared his petition for review by the Wisconsin Supreme Court.  Dkt. # 10, Exh. F.  Dougan does not suggest any cause for his default and the record does not disclose any.  In that respect, ineffective assistance of counsel can constitute cause for a procedural default, *Martinez v. Ryan*, — U.S. —, 132 S. Ct. 1309, 1317 (2012), but Dougan does not raise such a claim here.  Even if cause were shown, Dougan cannot establish prejudice or demonstrate that a fundamental miscarriage of justice has occurred with respect to either claim for reasons outlined briefly below.

## B.  The *Miranda* Claim

The Wisconsin Court of Appeals made short work of Dougan's claim that a probation

---

[1]  A petitioner may also overcome a procedural default where he can demonstrate that the failure to consider a claim will result in a "fundamental miscarriage of justice." *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010) (citing *Dretke v. Haley*, 541 U.S. 386, 388 (2004)). A fundamental miscarriage of justice will excuse a procedural default only in exceptional cases where the petitioner presents proof of "[actual] innocence" such that, "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 319-322 (1995)).  The petitioner in this case does not allege facts showing that he is actually innocent or that this exception otherwise applies.  Accordingly, the court will not address this issue further.

officer violated his constitutional rights by conducting a pre-sentence interview without advising him of his *Miranda* rights.  The court of appeals noted that such warnings are only required where "the interview 'seeks statements from a defendant on an element upon which the State still has the burden of proof." *Dougan*, 2010 WI 100, ¶ 18 (quoting *State v. Heffran*, 129 Wis. 2d 145, 165, 384 N.W.2d 351 (1986)).  Because Dougan's guilt had already been decided by a jury before the interview occurred, the court of appeals concluded that there was no constitutional right to receive nor basis to give *Miranda* warnings.  *Dougan*, 2010 WI 100, ¶ 18. Moreover, a probation officer is not required to give *Miranda* warnings before conducting a presentence interview.[2]  *See Williams v. Chrans*, 945 F.2d 926, 951 & n. 42 (7th Cir. 1991) (collecting cases); *see also United States v. Cortes*, 922 F.2d 123, 127 (2d Cir. 1990) (same); *Fleming v. United States*, No. 12-cv-1845, 2012 WL 3779066, *5 (N.D. Ill. 2012) (observing that *Miranda* was not intended to apply to voluntary, non-adversarial presentence interviews conducted by a neutral party such as a probation officer).  Dougan offers no legal basis to overturn this precedent, nor reason to believe that the Wisconsin Supreme Court would have

---

[2] The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. 5.  The privilege "generally is not self-executing," meaning that an individual who desires its protection "must [affirmatively] claim it."  *Salinas v. Texas*, — U.S. —, 133 S. Ct. 2174, 2178 (2013) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 425 (1984) (citation omitted)).  Because of the inherently coercive nature of custodial interrogation, the decision in *Miranda* requires that the government put a suspect on notice of the right to remain silent before taking an incriminating statement.  384 U.S. 436, 467-68 (1966).  A failure to give *Miranda* warnings does not by itself violate the Fifth Amendment.  *See Chavez v. Martinez*, 538 U.S. 760, 766-70 (2003); *Hanson v. Dane Cnty., Wis.*, 608 F.3d 335, 339-40 (7th Cir. 2010). In particular, the failure to issue warnings does "not abridge [the] constitutional privilege against compulsory self-incrimination, but depart[s] only from the prophylactic standards later laid down by [the] Court in *Miranda*." *Michigan v. Tucker*, 417 U.S. at 446 (1974).  The government violates a defendant's privilege against self-incrimination only if it introduces an unwarned, involuntary statement into evidence in pretrial or trial proceedings.  *See Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1026-27 (7th Cir. 2006).  Since neither occurred here, there was no constitutional violation. *Hanson*, 608 F.3d at 339-40.

ruled in his favor had this claim been properly presented in a petition for review to that court. Thus, even if Dougan could surmount the procedural bar, his claim is without merit.

### C.  Unlawful Possession of a Firearm in Wisconsin

Dougan argues that his conviction for unlawful possession of a firearm as a felon should also be set aside, because this right had been restored when he discharged a term of probation imposed by the State of Minnesota. The court of appeals squarely rejected this claim after finding that Dougan failed to comply with state procedure for the restoration of his rights to possess firearms:

> The felony conviction forming the basis for Dougan's felon-in-possession charge was his 1984 Minnesota conviction for the fourth-degree sexual assault of his thirteen-year-old cousin. According to the plea colloquy, Dougan admitted touching his cousin on her breast in a sexual manner. Because under Wisconsin law this conduct would constitute a felony, the Minnesota conviction was a proper basis for Dougan's felon-in-possession charge. *See* Wis. Stat. § 940.225(2)(e) (1983–84) . . . (defining second-degree sexual assault as "sexual contact . . . with a person who is over the age of 12 years and under the age of 16 years"); § 940.225(5)(a) (defining sexual contact); *see also* Wis. Stat. § 941.29(1)(b) (prohibiting a person from possessing a firearm if he or she has been convicted of a crime elsewhere that would be a felony if committed in this state).
>
> Dougan argues that because the 1988 Minnesota probation-discharge order for this crime stated he could possess a firearm after "[ten] years have elapsed since restoration of civil rights," he reacquired his right to possess firearms in both Minnesota and Wisconsin in 1998. Citing federal case law, Dougan contends the United States government must honor a state's restoration of firearm privileges. *See United States v. Bost*, 87 F.3d 1333 (D.C. Cir. 1996). We are not persuaded by Dougan's citation to case law from a foreign jurisdiction. Wisconsin's felon-in-possession statute specifies the methods of obtaining relief from the prohibition against firearm possession. *See* Wis. Stat. § 941.29(5). Neither of the specified methods were utilized here.

*Dougan*, 2010 WI App. 100, ¶¶ 10-11.  Noting that Dougan's Minnesota probation-discharge order "did not remove the prohibition against firearm possession in Wisconsin," the court of appeals found Dougan remained ineligible to possess a firearm in this state. *Id.* at ¶¶ 11-12.  The

court concluded, therefore, that Dougan's argument was without merit.  *Id.*

Dougan does not dispute that his prior conviction would be considered a felony if committed in Wisconsin, meaning that he was prohibited from possessing a firearm pursuant to Wis. Stat. § 941.29(1)(b) *unless* an exception applied.  As the Wisconsin Court of Appeals noted, Dougan did not fit within the specific statutory exception for individuals who have obtained relief from a disability or prohibition against firearm possession.  Such an exception exists only in cases where a felon (a) has "received a pardon" for the crime or felony specified in § 941.29(1) and has been expressly authorized to possess a firearm; or (b) has obtained relief from disabilities under 18 U.S.C. § 925©.[3]  Wis. Stat. § 941.29(5).  Dougan neither alleges facts showing that he was granted a pardon, nor that relief was granted in the manner specified in § 941.29(5), nor that any other recognized exception applies.  As a result, he failed to demonstrate that his felon-in-possession conviction is invalid or that he would have prevailed on this issue if it had been presented to the Wisconsin Supreme Court in a procedurally proper manner.  For this reason, his claim is procedurally barred.  Alternatively, considering Dougan's

---

[3]  Relief from a disability or restriction on possessing a firearm is available under this statute only by application to the United States Attorney General:

> A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Attorney General for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Attorney General may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. . . . Whenever the Attorney General grants relief to any person pursuant to this section he shall promptly publish in the Federal Register notice of such action, together with the reasons therefor.

18 U.S.C. § 925(c).

claim *de novo*, this court concludes that he is not entitled to relief for the reasons set forth above.

## II. Dougan's Remaining Preserved Claims

The only remaining claims proposed by Dougan concern the length of his sentence and whether he was denied effective assistance of counsel. Because these claims were rejected on direct appeal by the Wisconsin Court of Appeals and then the Wisconsin Supreme Court, their review under a petition for writ of habeas corpus is governed by the terms of the Antiterrorism and Effective Death Penalty Act, codified at 28 U.S.C. § 2254(d), which "tightly constrains the availability of the writ." *Winston v. Boatwright*, 649 F.3d 618, 625 (7th Cir. 2011) (citing *Stock v. Rednour*, 621 F.3d 644, 649 (7th Cir. 2010)). Indeed, the Supreme Court has emphasized repeatedly that the standard of review found in § 2254(d) is exacting and highly deferential, *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 15 (2013), demanding that state courts be given "the benefit of the doubt." *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786 (2011).

As a result, where a petitioner's claims have been adjudicated on the merits in state court, a federal habeas corpus court may grant relief *only* if the state court's adjudication of the prisoner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[4] To prevail, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

---

[4] Likewise, a petitioner who challenges the factual basis for a state-court decision must show that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's findings of fact are "presumed to be correct" for purposes of federal habeas corpus review unless a petitioner refutes those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

fairminded disagreement." *Id*. at 786-87.  Moreover, a state court's decision is deemed contrary to clearly-established federal law if it reaches (1) a legal conclusion in direct conflict with a prior decision of the Supreme Court or (2) a different conclusion than the Supreme Court based on materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000).  None of Dougan's remaining claims surmount this deferential standard.

### A.  Excessive Sentences

A jury found Dougan guilty as charged in counts one and two of the indictment, which alleged that he sexually assaulted two of his step-daughters on a repeated basis.  The circuit court imposed the maximum sentence allowed by law (40 years) on each count and ordered those terms to be served consecutively.  Each prison term included a consecutive 20-year term of extended supervision.  The circuit court added a consecutive two-year prison sentence for the firearm-possession offense, followed by a three-year term of extended supervision.  In total, Dougan was sentenced to spend 82 years in state prison followed by a 43-year term of supervised release.

Dougan contends that his term of imprisonment is excessive and unduly harsh in relation to the offense.  He argues, therefore, that his sentence violates the Eighth Amendment, which prohibits "cruel and unusual punishment."  The Wisconsin Court of Appeals rejected this same argument after determining that the circuit court properly sentenced Dougan to the maximum term allowed by state law:

> The three primary factors that a sentencing court must address are: (1) the gravity of the offense; (2) the character and rehabilitative needs of the offender; and (3) the need for protection of the public. *State v. Sarabia*, 118 Wis.2d 655, 673, 348 N.W.2d 527 (1984). The weight to be given each of the primary factors is within the discretion of the sentencing court and the sentence may be based on

any or all of the three primary factors after all relevant factors have been considered. *State v. Wickstrom*, 118 Wis.2d 339, 355, 348 N.W.2d 183 (Ct. App. 1984).

In considering the required factors, a sentencing court can also consider other relevant factors, including, but not limited to:

> (1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention.

*State v. Gallion*, 2004 WI 41, ¶ 43, 270 Wis.2d 535, 678 N.W.2d 197. When a defendant argues that his or her sentence is unduly harsh or excessive, we will hold that the sentencing court erroneously exercised its discretion "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State*, 70 Wis.2d 179, 185, 233 N.W.2d 457 (1975).

Here, the court considered the appropriate factors in imposing sentence, noting that punishment and protection of the public were the factors it deemed most important, especially given the gravity of the offenses. The court noted: "[F]or the matters that you did to these girls, you must be punished and punished in a serious fashion. This is the most serious of crimes happening to the most vulnerable of victims by a person who should have and absolutely had to know better." The court expressed particular concern with Dougan's process of "grooming" his victims over the course of months and years.

With respect to Dougan's character, the court noted Dougan had exhibited no remorse for his crime and, based on a letter Dougan submitted shortly before sentencing, the court concluded Dougan was merely begging for yet another chance. The court acknowledged Dougan's prior record and other "examples of sexual deviancy" for which he was not prosecuted, which added up to "a significant prior record ... that can't be ignored." Additionally, the court considered rehabilitation as a sentencing objective, but noted "probation and whatever counseling [Dougan] went through did not work" and should not be extended in this case. With respect to deterrence as an objective of the sentence, the court noted that given the nature of these particular crimes, it was not convinced perpetrators read the newspaper to see what kind of sentences are

12

imposed on other perpetrators. Ultimately, the court stated:

> [Y]ou have received the maximum that I believe I can give you for the reasons I have stated. And for the appellate courts, it is the maximum sentence because of the repeated nature of the counts that you were convicted of, and because of your prior record, because of the seriousness of the offense, because you lied on the stand, because of [the letter sent to the court]. All of that and more . . . . That's why you got the max.
>
> To the extent Dougan argues that given his age, his sentence is tantamount to a life sentence, the court is not required to consider a defendant's life expectancy at sentencing. *State v. Stenzel*, 2004 WI App 181, ¶ 20, 276 Wis.2d 224, 688 N.W.2d 20. That the court imposed a sentence greater than the recommendations made by the PSI writer and the prosecuting attorney likewise fails to establish that the sentence was excessive. "As long as the trial judge exercises discretion and sentences within the permissible range set by statute, the court need not explain why its sentence differs from any particular recommendation." *State v. Johnson*, 158 Wis.2d 458, 469, 463 N.W.2d 352 (Ct. App. 1990) (internal quotations omitted). Finally, although Dougan argues his sentence is excessive when compared to the defendant in an unrelated case, the trial court is not bound by the sentencing determination of the judge in that or any other case. *See Ocanas*, 70 Wis.2d at 187-88, 233 N.W.2d 457. "[T]he exercise of discretion dictates that different judges will have different opinions as to what should be the proper sentence in a particular case." *Id*. Because the court considered the proper factors when imposing sentence, we conclude that it properly exercised its sentencing discretion.

*Dougan*, 2010 WI App 100, ¶¶ 20-24.  The Wisconsin Supreme Court agreed and denied Dougan's petition for review of his sentence.

The Eighth Amendment to the United States Constitution guarantees that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted." U.S. CONST. amend. 8.  As such, "[t]he Eighth Amendment bars not only those punishments that are 'barbaric,' but also those that are 'excessive' in relation to the crime committed." *Coker v. Georgia*, 433 U.S. 584, 592 (1977). A sentence violates the Eighth Amendment if it is extreme and "grossly disproportionate" to the crime.  *Solem v. Helm*, 463 U.S. 277, 288 (1983); *see also Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J.,

concurring) (quoting *Solem*).

The Supreme Court has emphasized that, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare," *Solem*, 463 U.S. at 290-91 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1984)). Thus, in determining whether a particular sentence is unduly severe, reviewing courts "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Id*. at 290; *see also Hutto v. Davis*, 454 U.S. 370, 374 (1982) (per curiam). Where a non-capital conviction is at issue, "[punishment] that falls within legislatively prescribed limits will not be considered disproportionate unless the sentencing judge has abused his discretion.'" *Henry v. Page*, 223 F.3d 477, 482 (7th Cir. 2000) (quoting *United States v. Vasquez*, 966 F.2d 254, 261 (7th Cir. 1992)).

In Wisconsin, one count of repeated sexual assault of the same child is a Class B felony with a maximum sentence of sixty years. *See* Wis. Stat. § 948.025(1)(2); Wis. Stat. § 939.50(3)(b) (2007-2008 edition). Dougan's sentence (40 years in prison followed by 20 years of extended supervision on each count) was at the maximum range allowed, but within the range prescribed by the Wisconsin legislature. Therefore, his sentence is not excessive *per se*. *Henry*, 223 F.3d at 482.

Likewise, in affirming Dougan's sentence, the Wisconsin Court of Appeals observed that the circuit court weighed several factors, including the gravity of the offense and the vulnerability of the victims. Any sexual assault is a reprehensible offense, particularly the sexual assault of a child. *See United States v. Gross*, 437 F.3d 691, 694 (7th Cir. 2006) (finding that a defendant's convictions for sexual assault of a child "were serious and violent felonies," which distinguished

14

him from the defendant whose sentence was found disproportionate in *Solem*). Indeed, "[t]he impact of these crimes on the lives of the victims is extraordinarily severe." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir. 1994); *see also* Rainville, Christina, *Using Undiagnosed Post-Traumatic Stress Disorder to Prove Your Case*, CHILD LAW PRACT. (August 2012) (noting that "90% of children who are sexually assaulted develop PTSD, which is a severe and disabling neurological response to trauma"). The fact that Dougan was convicted of repeatedly assaulting his step-daughters made his offense infinitely more grave in the circuit court's determination. *See Cacoperdo*, 37 F.3d at 508 (rejecting an Eighth Amendment challenge where petitioner was convicted of ten counts of sexually molesting his three teenaged stepdaughters and would not be eligible for parole until he served at least forty years in prison). Based on this factor alone, Dougan's sentence was not so extreme as to be grossly disproportionate to the crime. *Solem*, 463 U.S. at 288.

Moreover, the record does not reflect that the circuit court considered any impermissible factor in imposing the maximum term allowed by state law. Nor does Dougan allege facts showing that the circuit court otherwise abused his discretion by imposing sentence in this manner, nor that the court of appeals erred in upholding that sentence. More importantly, because the Wisconsin Court of Appeals' decision was consistent with the proportionality analysis articulated by the Supreme Court in *Solem*, Dougan cannot establish that the opinion was contrary to or an unreasonable application of clearly established precedent. Accordingly, Dougan is not entitled to relief under 28 U.S.C. § 2254(d) on this claim.

## B. Ineffective Assistance of Counsel

Dougan contends further that he is entitled to relief because he was denied his Sixth

Amendment right to effective assistance of counsel when his attorney failed to file a pretrial motion to dismiss the felon-in-possession charges against him.  Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a criminal defendant must demonstrate (1) a constitutionally deficient performance by counsel and (2) actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

The first prong of this governing standard is only satisfied where the defendant shows that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687.  Moreover, scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  To prove prejudice, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Here, the Wisconsin Court of Appeals addressed Dougan's claims of ineffective-assistance under *Strickland*. *See Dougan*, 2010 WI App 10, ¶ 4.  Because the Wisconsin Court of Appeals identified the correct law, the central question is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether the determination was unreasonable — a substantially higher standard.'" *Knowles v. Mirzayance*, 556

U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)).  Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Knowles*, 556 U.S. at 123.  Thus, this court must be "doubly deferential" to the state court's application of *Strickland* on habeas corpus review.  *Id.*; *see also Richter*, 131 S. Ct. at 788 (emphasizing that the standards created by *Strickland* and § 2254(d) are "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted).  Said in other words, when a state prisoner seeks to set aside a sentence due to ineffective assistance of counsel, federal habeas corpus courts are required to "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt."  *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 15 (2013) (quoting *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1403 (2011)) (internal quotation marks omitted).  Dougan's allegations of ineffective-assistance do not overcome this exceedingly deferential standard.

As noted, Dougan contends that his counsel was deficient for failing to file a pretrial motion to dismiss the felon-in-possession charge against him.  Dougan's argument is based on an assertion that his right to possess a firearm was restored by the trial court in Minnesota when he discharged his term of probation in that state.  For reasons outlined above, the Wisconsin Court of Appeals rejected this same claim because Dougan had not attempted to comply with the state statute that governs relief from a disability or restoration of the right to possess a firearm in Wisconsin, where the offense occurred.  *See Dougan*, WI App 100, ¶ 11 (citing Wis. Stat. § 941.29(5)).  Having found his underlying argument was meritless, the court of appeals found that counsel was not deficient for failing to pursue that argument.  *Id.* (citing *State v. Wheat*, 2002 WI App 153, ¶ 14, 256 Wis. 2d 270, 647 N.W.2d 441 (counsel not deficient for

17

failing to pursue meritless claim)).

So, too, under federal law, counsel may not be deemed deficient for failing to file a frivolous motion or raise an argument that lacks merit. *Northern v. Boatwright*, 594 F.3d 555, 561 (7th Cir. 2010); *see also Fuller v. United States*, 398 F.3d 644, 652 (2005) ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis . . . for doing so that is not frivolous.") (quoting Model Rules Of Prof'l Conduct R. 3.1.); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."). As the Seventh Circuit has previously explained, a defense attorney has "no duty to make a frivolous argument; and there is a tactical reason not to make weak arguments (and *a fortiori* frivolous ones, *Evans v. Meyer*, 742 F.2d 371, 374 (7th Cir. 1984), which anyway are futile): they may distract the court from the strong arguments and as a result make it less likely to rule in the defendant's favor." *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003).

Dougan has not demonstrated that his defense counsel had, but failed to make, a meritorious argument or that a pretrial motion to dismiss the felon-in-possession charge would have been successful if one had been filed. As such, Dougan cannot demonstrate deficient performance on his counsel's part or actual prejudice due to his attorney's decision. More importantly, he does not show that the court of appeals' decision was objectively unreasonable. Accordingly, he is not entitled to relief on this claim.

## C.  Cumulative Error

Finally, Dougan claims entitlement to relief due to the combined effect of three failures by his trial attorney:  (a) adequately cross-examine a state crime lab analyst; (b) sever the firearm

charge from the sexual assault charges; and (c) hire a private investigator to prepare an alternative presentence report.  Dougan acknowledges that the Wisconsin Court of Appeals rejected each of these allegations of ineffective-assistance, finding no deficient performance.  Nevertheless, Dougan maintains that his trial was tainted by this "cumulative error."

To prevail on a claim of cumulative error in connection with a state criminal trial, a habeas corpus petitioner must establish that:  (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for purposes of habeas corpus review; and (3) the errors "so infected the entire trial that the resulting conviction violates due process." *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (citing *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-49 (1973)); *see also Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir. 2000) (requiring a petitioner must establish two elements: (1) at least two errors were committed in the course of the trial; (2) considered together, along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial).

Notably, the Wisconsin Court of Appeals rejected two of the alleged errors Dougan identifies (failure to adequately cross-examine a state crime lab analyst and failure to investigate or prepare an alternative presentence report) because he failed to articulate facts that would arguably support a finding of deficient performance.  *Dougan*, 2010 WI App 10, ¶¶ 7-9, 18.  On federal habeas corpus review, he simply repeats these same inadequately developed allegations.  In this circuit, unsupported suppositions and conclusory allegations "cannot carry the day" on collateral review.  *Paters v. United States*, 159 F.3d 1043, 1053 (7th Cir. 1998) (citing *Prewitt v.*

*United States*, 83 F.3d 812, 819-20 (7th Cir. 1996). In other words, conclusory statements like the ones offered by petitioner here are "insufficient to obtain habeas relief." *Bintz v. Bertrand*, 403 F.3d 859, 864 (7th Cir. 2005). Therefore, the court sees no reason to address these claims further.

With regard to Dougan's only other claim (that the charges against him were improperly joined for trial), he apparently believes that evidence of his prior conviction for sexual assault of a child in Minnesota would not have been admitted into evidence during a trial on charges that he sexually assaulted his step-daughters if the felon-in-possession charge had been severed. *Dougan*, 2010 WI App 10, ¶ 13. After outlining the law governing the admissibility of "other acts evidence," the court of appeals held that counsel was not deficient for failing to request a severance on this basis because the jury was going to learn of the Minnesota conviction regardless whether the felon-in-possession charge was severed[.]" *Id.* at ¶¶ 13-16. Dougan does not refute this decision, which is based on state evidentiary rules, nor does Dougan show that a motion to sever would have been successful. Accordingly, these bare allegations are also insufficient to establish deficient performance by counsel, much less entitlement to habeas relief. *Bintz*, 403 F.3d at 864.

As this review shows, none of Dougan's allegations describe error of constitutional proportion nor indicate that his trial was fundamentally flawed due to the combined effect of his counsel's alleged errors. *See Turner*, 481 F.3d at 301; *Alvarez*, 225 F.3d at 824. Where individual allegations of error are neither of constitutional stature nor even errors, there is "nothing to cumulate." *Turner*, 481 F.3d at 301 (citations omitted); *see also Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Zero times twenty is still zero."). Viewing counsel's performance under the doubly deferential standard that applies on habeas corpus review, *Titlow*,

20

134 S. Ct. at 15, Dougan has not shown that his counsel was constitutionally ineffective in isolation or overall, nor has he demonstrated that his trial was so permeated with error that his conviction violates due process.  Therefore, Dougan cannot establish that cumulative error requires habeas corpus relief.

## III.  Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner.  To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).

Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case because the question is not a close one.  For the reasons already stated above, petitioner has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law. Because reasonable jurists would not debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that:

1. Donald Allan Ray Dougan's supplemental amended petition (dkt. # 20) is DENIED and this case is DISMISSED with prejudice.

2. A certificate of appealability is DENIED.  If petitioner wishes he may seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 27th day of December, 2013.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge